**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| KECIA GREEN, ) | |
| ) | CASE NO. 1:07CV2093 |
| Petitioner, ) | |
| ) | JUDGE KATHLEEN M. O'MALLEY |
| v. ) | |
| ) | MAGISTRATE JUDGE GREG WHITE |
| PATRICIA ANDREWS, Warden ) | |
| ) | **REPORT & RECOMMENDATION** |
| Respondents. ) | |

Petitioner, Kecia Green ("Green"), challenges the constitutionality of her conviction in the case of *State v. Green*, Ashtabula County Common Pleas Case No. 02-CR-22. Green, represented by counsel David Doughten, filed a Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on July 13, 2007 with the United States District Court for the Northern District of Ohio. This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Green's petition (Doc. No. 1) be DENIED.

**I. Procedural Background**

**A.      Conviction**

On March 19, 2002, the Ashtabula County Grand Jury returned a ten count indictment charging Green's co-defendant, Jameel Banks, with one count of aggravated robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01 with a firearm specification, three counts of kidnapping in violation of O.R.C. § 2905.01 with firearm specifications, and one count of theft in violation of O.R.C. § 2913.02 with a firearm specification. (Doc. No. 8, Exh. 1.) The remaining five counts of the indictment charged Green with aiding and abetting Jameel Banks in the commission of these crimes. *Id*.

Green entered a plea of "not guilty" to all the charges. (Doc. No. 8, Exh 2.) On July 30, 2002, Green filed a motion for a separate trial, which the trial court denied. (Doc. No. 8, Exhs 3 & 4.) On August 11, 2003, Green filed a motion to dismiss pursuant to O.R.C. § 2945.73(B), Ohio's speedy trial statute. (Doc. No. 8, Exh. 5.) The trial court denied this motion as well.

On August 20, 2003, both Green and her co-defendant were found guilty of all charges. (Doc. No. 8, Exh. 6.)

On October 9, 2003, Green was sentenced to a total of eight years for the complicity to aggravated robbery and complicity to theft convictions, which the trial court merged. (Doc. No. 8, Exh. 7.) Green also was sentenced to concurrent three-year terms of imprisonment for each of the complicity to kidnapping convictions. *Id*. Finally, Green was sentenced to a mandatory three-year term for the firearm specification. *Id*. The kidnapping, robbery, and firearm sentences were to be served consecutively, resulting in an aggregate sentence of fourteen years imprisonment. *Id*.

**B.     Direct Appeal**

Green, represented by new counsel, filed a timely appeal with the Eleventh District Court of Appeals ("state appellate court") and raised the following assignments of error: (1) the trial court erred by failing to dismiss the charges against Green after her statutory speedy trial rights were violated; (2) the trial court erred by refusing to inquire into the possibility that the jury was exposed to a prejudicial newspaper article; (3) Green's convictions were against the manifest weight of the evidence; and (4) the trial court erred by denying Green's motion for separate trials.  (Doc. No. 8, Exh. 8.)  On November 19, 2005, the state appellate court affirmed the trial court's judgment.  (Doc. No. 8, Exh. 10.)

On January 31, 2006, Green, represented by counsel, filed a Notice of Appeal with the Supreme Court of Ohio and raised the following assignments of error: (1) the trial court erred in its application of Ohio's speedy trial statute; (2) the trial court erred by refusing to hold a hearing into whether a newspaper article prejudiced the jury; and (3) the trial court erred by refusing to sever co-defendants for trial where failure to sever resulted in a violation of Ohio's speedy trial statute.  (Doc. No. 8, Exh. 12.)  On April 26, 2006, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  (Doc. No. 8, Exh. 14.)

**C.     Federal Habeas Petition**

On July 13, 2007, Green filed a Petition for a Writ of Habeas Corpus.  (Doc. No. 1.)  The asserted grounds for relief are summarized as follows:

> Ground One: Petitioner was tried in violation of Ohio's speedy trial statute and in violation of the Sixth and Fourteenth Amendments.
>
> Ground Two: Petitioner was deprived of his right to a trial before a fair and impartial jury where the trial court refused to hold a

3

> hearing as prescribed in *Remmer v. United States*, 347 U.S. 227 (1954).
>
> Ground Three: Petitioner's constitutional rights were violated when the trial court refused to sever Petitioner's trial from that of her co-defendant.[1]

(Doc. No. 1.)

## II. Summary of the Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Green's conviction as follows:

> This matter proceeded to a joint trial before a jury on August 12, 2003. The facts revealed that on the evening of December 22, 2001, an Aldi's supermarket in Ashtabula County, Ohio, was robbed. Three store employees, who were present during the robbery, testified to the factual events of the robbery.
>
> At approximately 7:00 p.m., on December 22, 2001, an Aldi's employee closed the store to any incoming customers, while the remaining customers finished shopping. A few minutes later, the employee proceeded to the store restrooms for a final clean up. Upon entering one of the restrooms, the employee was confronted by a man wearing a ski mask and holding a gun. The perpetrator demanded that the employee bring him to the store's office. The employee complied. Once in the office, the perpetrator opened the employee's cash register till, which was empty.
>
> Meanwhile, a co-worker "buzzed" the employee, which signaled the employee to proceed to the front of the store and ring out the final customers. The perpetrator instructed the employee to page the store's assistant manager. The employee obeyed the perpetrator's order.
>
> The assistant manager and co-worker, who were the only other employees at the store, responded to the page. When the assistant manager and co-worker opened

---

[1] According to Green's Traverse, her third claim for relief is withdrawn. (Doc. No. 11 at 13.) Therefore, the Court will treat Green's third ground for relief as moot.

the office door they were confronted by the perpetrator, as he pointed a gun at both of them. He bound the feet and hands of the assistant manager and co-worker with duct tape, but then cut loose the binds to allow them to open their register tills. After taking money from the register tills, the perpetrator commanded the assistant manager to open the store's safe. The assistant manager informed the perpetrator that she was unable to open the safe.

Importantly, all three store employees testified that throughout the robbery appellant was communicating to an individual outside the store via cell phone. The testimony established that the perpetrator was speaking with a female who was providing information that assisted with the robbery. Witness testimony established that appellant fled the store around 8:00 p.m.

Directly across the street from the Aldi's was a Burger King. Testimony from a patron of the Burger King revealed the following. At approximately 7:35 p.m., on December 22, 2001, the Burger King patron noticed appellant talking very loudly on her cell phone. While at Burger King, appellant used her cell phone on multiple occasions. Further testimony demonstrated that appellant was preoccupied with Aldi's as she constantly walked outside and looked across the street into the store. Appellant's suspicious behavior was reported to the Ashtabula County Police Department.

Shortly after the robbery had ended, the police questioned appellant at the Burger King. Appellant told the police that she was waiting at the Burger King for her sister to pick her up. However, appellant was unable to provide the police with her sister's name. She also stated that her sister was driving a "poopy brown" Ford Taurus and that her sister was shopping at a local mall. The police attempted to locate the sister, but they were unable to find a Ford Taurus matching appellant's description and the sister failed to pick up appellant. During the police questioning, appellant received a call on her cell phone from an unknown individual and then used her cell phone to make a call. The police continued to question appellant and ultimately arrested her that night, based upon her alleged participation in the robbery.

During the joint trial, the prosecution presented evidence of various items found in the car of co-defendant, Jameel Banks, which was left abandoned in the Aldi's parking lot on the night of the robbery. These items included a cell phone bill that belonged to appellant, slips of paper detailing appellant's home address and telephone numbers, and a cell phone battery that was compatible with appellant's cell phone.

The prosecution also introduced evidence with respect to DNA testing of cigarette butts that were left in the abandoned automobile of co-defendant, Jameel Banks. The evidence established that the DNA removed from the cigarette butts was

5

>consistent [with] appellant's DNA.
>
>Finally, the prosecution provided evidence of appellant's cell phone use on the night of December 22, 2001. The cell phone company's records established that appellant's cell phone was used to place calls to the co-defendant's cell phone, and receive calls from the co-defendant's cell phone, forty-eight times between the hours of 6:55 p.m. and 10:55 p.m, on the night of the offenses.
>
>Following the joint trial, the jury found appellant and her co-defendant guilty. Accordingly, the court entered judgment convicting appellant of one count of complicity to aggravated robbery, one count of complicity to theft, and three counts of complicity to kidnapping, with a firearm specification included on all counts. The trial court sentenced appellant to serve an aggregate eleven-year term at the Ohio Reformatory for Women.

*State v. Green*, 2005-Ohio-6715, ¶¶4-14, 2005 Ohio App. LEXIS 6026 (Ohio Ct. App. 2005)

### III. Exhaustion and Procedural Default

Although Respondent asserts that Green's first ground for relief is not cognizable upon federal habeas review, she argues, in the alternative, that Green's attempt to raise a federal speedy trial rights violation is procedurally defaulted. (Doc. No. 8 at 8-12.) Green contends that Ohio's speedy trial statute created a liberty interest and that a violation of that statute resulted in a Due Process violation. (Doc No. 11 at 1-2.)

**A.     Failure to Exhaust**

Before this Court may review a federal claim raised in a habeas petition, it must first determine whether the petitioner has exhausted the remedies available to her in state court. *See* 28 U.S.C. §2254(b)(1). In the interest of preserving the principles of comity and federalism, federal courts require state prisoners to exhaust "available state remedies" before addressing the merits of a federal claim on federal habeas review. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991). In order to exhaust available state remedies, Green must have fairly presented the substance of her federal habeas corpus claims to the state courts. *See Picard v. Connor*, 404

U.S. 270, 275 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The exhaustion requirement is satisfied when the highest court in the state is given a fair opportunity to rule on a petitioner's claims. *Picard*, 404 U.S. at 275. In addition, "[t]he state courts must be provided with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love*, 782 F.2d 53, 55 (6th Cir. 1986).

On direct appeal, Green never fairly presented a federal speedy trial claim before the Ohio courts. (Doc. No. 8, Exhs. 8 & 12.) Although Green claimed that the length of time that elapsed between her arrest and trial amounted to a violation of Ohio's speedy trial statute, her challenge was based solely on state law and not on any principles of federal constitutional law. *Id*. In addition, Green never raised the argument that Ohio's speedy trial statute created a liberty interest and that the trial court's actions resulted in a federal due process violation. *Id*. A petitioner has not fairly presented his claim merely because the facts necessary to support a federal constitutional claim are present or because the constitutional claim appears to be self-evident. *See Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983), *citing Anderson*, 459 U.S. at 6. Rather, fair presentation requires a petitioner "citing a provision of the Constitution, federal decisions employing Constitutional analysis, or state decisions employing Constitutional analysis in similar fact patterns." *Levine v. Trovik*, 986 F.2d 1506, 1515 (6th Cir. 1993). Green's memoranda before the state appellate court and the Supreme Court of Ohio were devoid of any arguments concerning the federal constitutional right to a speedy trial or due process, thereby depriving the state courts of an opportunity to consider her federal claims and cure any potential errors. A review of the state appellate's court decision reveals that its ruling was rooted firmly in state law without any discussion of federal constitutional standards. Thus, her federal claim

7

was never fairly presented to the state courts.

It is well established that "[i]f the petitioner failed to exhaust state remedies and the [state] court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[, then] there is a procedural default for purposes of federal habeas [review] regardless of the decision of the last state court to which the petitioner actually presented his claims." *Fields v. Bagley*, 275 F.3d 478, 482 n. 1 (6th Cir. 2001), *quoting Coleman*, 501 U.S. at 722. Because Green could have raised her claims on direct appeal, she would be barred from raising them in an application for post-conviction relief. Ohio courts have found that the doctrine of *res judicata* "bars a convicted defendant, who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant ... on an appeal from that judgment." *State v. Benton*, 27 Ohio St. 2d 87, 90-91 (Ohio 1971); *State v. Combs*, 652 N.E.2d 205, 209 (Ohio Ct. App. 1994). The doctrine of *res judicata* also applies to constitutional claims that could have been raised in a direct appeal. *See Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). As such, to the extent Green attempts to raise federal constitutional claims, her first ground for relief is defaulted.[2] Green's argument that Ohio's speedy trial statute was violated will be addressed in Part IV, *infra*.

---

[2] A petitioner's procedural default may be excused upon a showing of "cause" for the procedural default and "actual prejudice" stemming from the alleged error. *Maupin v. Smith*, 785 F.2d 135, 138-39 (6th Cir. 1986). "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006), *quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986). Green has not presented any argument suggesting that her default should be excused for "cause."

Turning to Green's second ground for relief, Respondent argues that this claim is also procedurally defaulted. On direct appeal, Green argued that her federal constitutional right to a trial before a fair and impartial jury was violated when the trial court failed to hold a hearing to determine whether a newspaper article published at the beginning of the trial tainted the jury. (Doc. No. 8, Exh. 8.) Respondent maintains that Green's failure to ask for a hearing during trial renders her claim procedurally defaulted.[3] (Doc. No. 8 at 13-15.) Green now argues that a request for a mistrial requires a hearing to establish if the jury was prejudiced. Therefore, Green contends that her request for a mistrial implicitly contained a request for a hearing. (Doc. No. 11 at 9.) Green reiterated her argument before the Ohio Supreme Court. (Doc. No. 8, Exh. 12.)

Green's memoranda before the Ohio courts fairly presented the substance of her federal habeas corpus claims. A claim has been "fairly presented" where a petitioner: "(1) reli[ed] upon federal cases employing constitutional analysis; (2) reli[ed] upon state cases employing federal constitutional analysis; (3) phras[ed] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleg[ed] facts well within the mainstream of constitutional law." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000), citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir.1987). Although Green did not cite

---

[3] Based on the state appellate court's opinion, it appears that Green did not request a hearing to establish prejudice before moving for a mistrial. *Green*, 2005-Ohio-6715 at ¶45. While the defense's failure to request a hearing before moving for a mistrial may have been a tactical decision by Green's counsel, *see White v. Smith*, 984 F.2d 163, 166 (6th Cir. 1993), such a failure does not prevent Green from raising the argument that the trial court should have held such a hearing and that the trial court's failure to do so violated her federal constitutional rights. Nevertheless, as discussed in detail below, a defendant "must demonstrate from facts in the record that actual prejudice occurred" if there was never a formal request for a hearing on the issue of jury misconduct in the trial court. *United States v. Walton*, 908 F.2d 1289, 1297 (6th Cir. 1990).

9

the *Remmer* decision on direct appeal, she clearly invoked her federal right to a trial before a fair and impartial jury and relied upon federal cases employing a constitutional analysis as well as state cases employing federal constitutional analysis. As such, her second ground for relief is not procedurally defaulted.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).

A state court's decision is contrary to clearly established federal law "if the state court

10

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

**A.      Grounds One: Violation of O.R.C. § 2945.71**

As discussed above, ground one is procedurally defaulted to the extent Green is attempting to raise a violation of her federal right to a speedy trial or a federal due process violation.  Therefore, the only claim left to consider is Green's claim that she was not brought to trial in a timely manner under Ohio's speedy trial statute – O.R.C. § 2945.71 *et seq*.

The statutory right to a speedy trial under Ohio law is not necessarily the same as the constitutional right to a speedy trial under the Sixth Amendment.  *See Hunt v. Mitchell*, 261 F.3d 575, 584 (6th Cir. 2001).  Thus, Green's remaining claim is based solely on state law.  Such a claim, however, is not cognizable upon federal habeas review, as a federal court reviewing a

11

petition for habeas corpus is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998) ("A claim based solely on an error of state law is not redressable through the federal habeas process.") (citations omitted). In *Norris*, the Sixth Circuit expressly found that "[i]t is especially inappropriate for a federal habeas court to set aside a state court's ruling on an issue of state law where, as in the present situation, Ohio's appellate courts on direct appeal have already found appellant's claim of a violation of his *statutory right to a speedy trial* to be meritless." *Id*. (emphasis added).

Nonetheless, a federal court may provide habeas relief if a state court's error in interpreting or applying its own laws rendered a defendant's trial so "fundamentally unfair" as to have deprived appellant of substantive due process. *Id*. Here, however, Green has not alleged the state speedy trial ruling resulted in a fundamentally unfair trial. Generally, "fundamental fairness" has little application to pretrial proceedings and "that application is limited to events or circumstances that affect or tend to affect the fairness of the trial." *Hutchison v. Marshall*, 744 F.2d 44, 47 (6th Cir. 1984). As such, Green's first ground for relief should be denied.

**B.    Ground Two: Fair and Impartial Jury**

In ground two of her petition, Green alleges that she was deprived of a fair trial before an impartial jury when the trial court failed to hold a hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954) on the issue of whether any of the jurors read a local newspaper article about her co-defendant that was published on the first day of their joint trial.

In *Remmer*, the Supreme Court stated that "[i]n a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties." 347 U.S. at 229. The *Remmer* case involved a challenge to the denial of a motion for a new trial after an unnamed person had communicated with the jury foreman and remarked to him that he could profit by bringing in a verdict favorable to the defendant. *Id*. at 228. The Court remanded the matter to the district court to hold a hearing to determine whether the incident complained of was harmful to the petitioner, and if so, to grant a new trial. *Id*. at 230.

In another decision, the Supreme Court explained that:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* and held in this case.

*Smith v. Phillips*, 455 U.S. 209, 217 (1982).

Green's case is distinguishable from *Remmer* in two aspects. First, rather than a private communication, contact, or attempt to tamper, directly or indirectly, with a juror, Green's case involves a published newspaper article. Second, the jury contact in *Remmer* was reported by the juror to the trial judge, whereas here, there was nothing more than speculation that one or more jurors *might* have read the newspaper article. The trial judge noted that, prior to the article being

13

published, he had expressly instructed the jurors not to discuss the case with anyone and not to listen to or read any news media accounts regarding the trial. (Doc. No. 8, Exh. 14.) The state appellate court found Green's assertion that a single newspaper article potentially prejudiced the jury was without merit. *Green*, 2005-Ohio-6715 at ¶47. Further, the state appellate court found that the trial court's refusal to *voir dire* the jury, had it been requested to do so, would not have amounted to an abuse of discretion. *Id*. at ¶48.

Green has not cited any clearly established federal law that suggests a trial court *must* conduct a *Remmer*-type hearing every time a potentially prejudicial news article or story is brought to a trial court's attention, especially where there is no evidence that any juror was aware of the article or story. Many trials have intense daily news coverage. Holding hearings or conducting *voir dire* at the mere suggestion of potential impact of such coverage on jurors would not promote judicial economy.

The Court is unaware of any case law directly on point, but at least one decision from the Sixth Circuit "upheld a trial court's refusal to conduct an evidentiary hearing of the *Remmer* type ... upon concluding that the defendant failed to establish that any extraneous influences had been brought to bear on the jury...." *United States v. Rigsby*, 45 F.3d 120, 123-124 (6th Cir. 1995); *see also Garcia v. Andrews*, 488 F.3d 370, 377 (6th Cir. 2007) (finding that there is "no Supreme Court precedent that requires a *Remmer* hearing" where a trial court did not hold a hearing after receiving a note from the jury stating that several jurors had a subjective fear of reprisal). Further, another Sixth Circuit decision found that the Constitution does not require a trial court to "*sua sponte* conduct a full-blown evidentiary hearing every time a courtroom spectator makes a comment within the jury's hearing." *White v. Smith*, 984 F.2d 163, 166 (6th Cir. 1993). Recently,

this Court observed that "[a] defendant must request a *Remmer* hearing on the prejudice issue, otherwise the Court need not conduct such a hearing." *United States v. Gray*, 2005 U.S. Dist. LEXIS 28869 at *34 (N.D. Ohio 2005) (J. Gwin), *citing United States v. Walker*, 160 F.3d 1078, 1083-84 (6th Cir. 1998) ("[A] defendant who waits until appeal to request a hearing bears a heavy burden, since the defendant has thereby effectively deprived this court of any basis for concluding that a hearing would be necessary, and asks us to presume that the district court would not have acceded to such a request, and would have done so for erroneous reasons."); *see also Walton*, 908 F.2d at 1297 (finding that where there was never a formal request for a hearing on the issue of jury misconduct and the issue is raised for the first time on appeal, the defendant "must demonstrate from facts in the record that actual prejudice occurred.")

The above cases are sufficiently analogous to the present matter and Green was not constitutionally entitled to a hearing as: (1) she did not request such a hearing; and (2) she did not establish that any extraneous influences had been brought to bear on the jury. In this case, there was no evidence that any juror heard about or read the local newspaper article. Therefore, the state appellate court's decision was neither contrary to nor an unreasonable application of clearly established federal law.

## IV. Conclusion

For the foregoing reasons, it is recommended that Green's petition (Doc. No. 1) be DENIED.

                                                                              s/ Greg White
                                                                         U.S. Magistrate Judge

Date: May 30, 2008

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**