# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **KECIA GREEN,** | : | **Case No. 07CV2093** |
| **Petitioner,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **PATRICIA ANDREWS, Warden,** | : | <u>**OPINION & ORDER**</u> |
| **Respondent.** | : | |

Before the Court is Petitioner Kecia Green's ("Green") *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus* (Doc. 1, Petition).  Green's Petition asserts three grounds for relief: (1) a due process claim relating to violation of Ohio's speedy trial statute; (2) a violation of her right to a fair and impartial jury in connection with the trial court's refusal to afford Green a hearing with respect to her claim of prejudice due to an article in a local newspaper; and (3) a violation stemming from the trial court's refusal to sever her trial from that of her co-defendant.[1]  The case was automatically referred to Magistrate Judge Greg White for preparation of a Report and Recommendation ("R&R").  Respondent Warden Patricia Andrews ("the State") filed a Return of Writ (Doc. 8, Return of Writ), and Green filed a Traverse (Doc. 11, Traverse).  On May 30, 2008, Magistrate Judge White issued an R&R recommending that this Court deny Green's Petition.  (Doc. 12, R&R.)  Green timely filed objections to the R&R (Doc. 13, Objections), and the State did not respond to Green's objections.  Consequently, this case is ripe for adjudication.  For the reasons articulated below, the Court **<u>ADOPTS</u>** the R&R as discussed below, and, accordingly, **<u>DISMISSES</u>** Green's Petition.

---

[1]  As the Magistrate Judge correctly noted in his Report and Recommendation, Green expressly withdrew her third ground for relief in her Traverse, Doc. 11 at 13.  (*See* Doc. 12 at 4.) Accordingly, the Court **ADOPTS** the Report and Recommendation with respect to this claim – it is no longer before the Court and will not be discussed herein.

I.      **BACKGROUND**

The R&R sets forth the procedural history of this case, as well as the factual background as described in the opinion of the Ohio Court of Appeals.  (Doc. 12 at 2-6.)  Green does not challenge this articulation of the procedural history or factual background in her Objections. (*See* Doc. 13.) Accordingly, in the interest of efficiency, the Court adopts the R&R's articulation of the relevant factual and procedural background, and will only provide a brief summary for purposes of this Opinion & Order.

A.      **PROCEDURAL HISTORY**

On December 22, 2001, Green was arrested in connection with a robbery that took place at a supermarket in Ashtabula County, Ohio.  The Ashtabula County, Ohio Grand Jury returned an indictment charging Green with aiding and abetting co-defendant Jameel Banks ("Banks") in committing aggravated robbery, kidnapping, and theft, all with firearm specifications.  The indictment stemmed from the events of December 22, 2001.  It charged that Green acted as a lookout, communicating with Banks via cell phone from a nearby Burger King restaurant while Banks robbed the supermarket.

Green pled not guilty to all charges, and moved for a separate trial from Banks.  The trial court denied her motion.  On August 11, 2003, Green filed a motion to dismiss pursuant to Ohio Revised Code § 2945.73(B), Ohio's Speedy Trial Act.  (Doc. 8, Ex. 5.)  The trial court denied this motion.  A jury found Green and co-defendant Banks guilty of all charges on August 20, 2003. (Doc. 8, Ex. 6.)  On October 9, 2003 Green was sentenced to an aggregate sentence of fourteen years imprisonment.  (Doc. 8, Ex. 7.)

Now represented by her current counsel, David L. Doughten, Green timely appealed her

-2-

conviction to the Eleventh District Court of Appeals ("state court of appeals").  She presented four assignments of error: (1) the trial court erred by failing to dismiss the charges against her after the state violated the Ohio Speedy Trial Act; (2) the trial court erred by refusing to inquire into whether the jury was exposed to a potentially prejudicial newspaper article; (3) her convictions were against the manifest weight of the evidence; and (4) the trial court erred in denying her motion for a separate trial.  (Doc. 8, Ex. 8.)  The state court of appeals affirmed the trial court in a written opinion on December 16, 2005.  *State v. Green*, Case No. 2003-A-0111, 2005 WL 3476663 (Ohio Ct. App. Dec. 16, 2005).

Still represented by Mr. Doughten, Green then filed a timely notice of appeal with the Ohio Supreme Court on January 31, 2006.  (Doc. 8, Ex. 9.)  She presented three assignments of error: (1) the trial court violated her speedy trial rights; (2) the trial court erred in refusing to hold a hearing with respect to a potentially prejudicial newspaper article; and (3) the trial court erred in denying her motion to sever her trial from that of her co-defendant.  (*Id*.)  On April 26, 2006, the Ohio Supreme Court issued a one-sentence order dismissing the appeal as not involving any substantial constitutional question.  (Doc. 8, Ex. 13.)

Finally, through Mr. Doughten, Green timely filed the Petition now before the Court on July 13, 2007.  (Doc. 1.)

### B.    GREEN'S GROUNDS FOR RELIEF IN HER PETITION

Green is pursuing two[2] grounds for relief in her § 2254 Petition.

GROUND ONE: Petitioner was tried in violation of Ohio's speedy trial statute and in violation of the Sixth and Fourteenth Amendments.

GROUND TWO: Petitioner was deprived of her right to a trial before a fair and

---

[2]  As noted above, Green has abandoned her third ground for relief.

-3-

impartial jury where the trial court refused to hold a hearing as prescribed in *Remmer v. United States*, 347 U.S. 227 (1954).

(Doc. 1.)

Ground One relates to Green's claim that the state violated her right to a speedy trial under O.R.C. § 2945.73(B), which requires the state to bring Green to trial within 270 days of her arrest. Although Green's trial occurred more than 270 days after her arrest, the state court of appeals held that, pursuant to the statute, numerous events properly tolled the speedy trial clock, and, accordingly, the state did not violate § 2945.73(B). *See State v. Green*, 2005 WL 3476663 at *5. Judge William M. O'Neill dissented from this holding, however, finding that the state had violated Green's § 2945.73(B) speedy trial rights. Judge O'Neill concluded that the trial court erred in finding that a continuance based on the fact that the sheriff, a witness for the state, was unavailable on the scheduled trial date due to a family vacation could toll the speedy trial clock. *Id*. at *8-9.

Ground Two relates to Green's claim that the trial court erred when it refused to hold a hearing pursuant to *Remmer v. United States*, 347 U.S. 227 (1954), to explore whether any jurors were exposed to a potentially prejudicial newspaper article. The trial court denied Green's oral motion for a mistrial when, *after* the jury had been selected and instructed *not* to read the newspaper, a local newspaper ran a story mentioning her co-defendant's prior conviction. Green argued that the article was potentially prejudicial given that she was associated with the co-defendant in the eyes of the jury. The trial court concluded that, because it had previously instructed the jurors not to read the newspaper and because Green did not allege that any of the jurors had actually been exposed to the article, further inquiry into the matter would be unnecessary and inefficient.

-4-

## II.    LAW AND STANDARD OF REVIEW

Green filed her § 2254 Petition on July 13, 2007.  (Doc. 1.)  Therefore, the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of that petition.

*Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see also*

*Woodford v. Garceau*, 538 U.S. 202, 210 (2003).[3]

### A.    GREEN'S PETITION IS **NOT** TIME-BARRED

First, as a procedural matter, the AEDPA requires that *habeas* petitions be filed within one

year of the latest of four triggering dates set forth at 28 U.S.C. § 2244(d)(1).  In this case, it is

undisputed that Green timely filed her Petition pursuant to 28 U.S.C. § 2244(d)(1)(A).[4]

### B.    APPLICABLE PREREQUISITES TO HABEAS RELIEF

In addition to the statute of limitations, there are two other prerequisites to habeas relief

under the AEDPA.  First, state prisoners must ordinarily exhaust all available state court remedies

prior to seeking habeas relief.  28 U.S.C. § 2254(b), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

Second, under the doctrine of procedural default, a habeas petitioner cannot ordinarily assert claims

---

[3] The AEDPA applies to petitions filed *after* the Act's April 26, 1996 effective date.
*Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

[4] Section 2244(d)(1)(A) provides:

(d)(1)   A 1-year period of limitation shall apply to an application for a writ of
*habeas corpus* by a person in custody pursuant to the judgment of a state
court. The limitation period shall run from the latest of –

(A)    the date on which the judgment became final by the conclusion of
direct review or the expiration of the time for seeking such review .
. .

28 U.S.C. § 2244(d)(1)(A).  The Ohio Supreme Court denied Green's petition for appeal on
April 26, 2006 and she filed this Petition less than three months later -- *i.e.*, well within the one-
year limitations period.  (*See* Doc. 1.)

that were not properly submitted to the state court under its procedural rules and which are now barred by state procedural law.  *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

## 1.    Exhaustion

A petitioner has exhausted her state court remedies when she has fairly presented all of the claims raised in his habeas petition to the state courts.  *Rhines*, 544 U.S. at 274.  The petitioner bears the burden of proving exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Habeas relief is only appropriate for violations of federal constitutional rights.  28 U.S.C. § 2254(d).  The exhaustion requirement is satisfied if the petitioner presents the factual and legal basis of all her claims to the highest state court, thus giving the state an opportunity to adjudicate the claims before the petitioner seeks habeas relief in federal court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  By fairly presenting her claims to the state's high court, the petitioner gives each rung in the state judicial ladder a chance to address the claims and exhausts the state's established procedures.  *Id.*  Claims asserted as general allegations related to a federal constitutional right do not satisfy the "fairly presented" standard for exhaustion – it is not enough to simply mention "due process," for instance.  *See Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006).

When a claim has not been exhausted, the district court generally must dismiss the petition in its entirety, thus giving the petitioner an opportunity to fairly present the unexhausted claim to the appropriate state court.  *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982); *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000) (holding that the AEDPA preserved the *Rose* rule that a petition including exhausted and unexhausted claims should be dismissed).  As discussed below, however, when a claim is unexhausted, but the petitioner has no remaining avenues to pursue relief in the state court, for whatever reason, the district court will analyze the petition under procedural default.  *See*

-6-

*Buell v. Mitchell*, 274 F.3d 347, 349 (2001).

## 2.    Procedural Default

The procedural default doctrine bars federal review of the merits of a habeas ground for relief in two circumstances.  First, procedural default bars habeas review of an exhausted claim if the state courts below applied a state procedural rule and declined to address the merits of that ground.  *See Wainwright*, 433 U.S. at 87.  In other words, when the last explained state court decision rests upon procedural default, a federal district court is not required to reach the merits of a habeas petition's claims.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  Second, procedural default bars habeas review of an unexhausted claim when, hypothetically, a state procedural rule would now bar the unexhausted claim.  Accordingly, any claim that the Court determines was procedurally defaulted, or in the case of an unexhausted claim, would now be procedurally defaulted, in the state courts generally will not be reviewable in a federal habeas proceeding.

In his R&R, Magistrate Judge White discusses exhaustion and procedural default in recommending dismissal of Green's first ground for relief, as does this Court below.

## B.    STANDARD FOR MERITS REVIEW

When the petitioner has satisfied the procedural prerequisites to habeas relief, the AEDPA sets forth the standard by which federal courts review the merits of properly-asserted grounds for relief.  In pertinent part, the AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

-7-

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

After passage of the AEDPA, the various circuits interpreted the standard to be applied differently under these provisions.   In response to these nationwide variations, the Supreme Court directly addressed the meaning of the AEDPA's statutory language and, as the Sixth Circuit has confirmed, announced that the statute "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (emphasis added).

The Supreme Court clarified the language of § 2254(d)(1), and held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-413 (emphasis added).  The Court offered additional guidance regarding the meaning of "unreasonable application." A state-court opinion can also engender the 'unreasonable application' of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context." *Id*. at 409.  Further, the Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* (emphasis added).  Elaborating on the term "objectively

-8-

unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.*

Additionally, and perhaps most importantly for purposes of analyzing Green's Petition, in reviewing habeas petitions, federal courts are obliged to "accept as valid a state court's interpretation of state law and rules of practice of that state."  *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).  Similarly, they are not free to ignore the pronouncement of a state appellate court on matters of state law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000).  "Federal habeas corpus relief does not lie for errors of state law."  *Earhart v. Konteh*, 589 F.3d 337, 349 (6th Cir. 2009) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  The standard of review applied to the merits of a petition for a writ of habeas corpus, therefore, is a stringent one.

III.    **ANALYSIS OF THE MAGISTRATE JUDGE'S R&R AND GREEN'S OBJECTIONS**

   A.    **THE R&R**

       1.    **Ground One – Speedy Trial**

With respect to ground one of Green's Petition, Magistrate Judge White found that Green had not raised her speedy trial argument as a federal constitutional claim before the state court of appeals, and, therefore, had failed to exhaust her first ground for relief.  (Doc. 12 at 7-8.) Consequently, he concluded that, because the doctrine of *res judicata* would now act as a procedural bar to that claim in Ohio courts, Green has procedurally defaulted this claim.  (*Id.* at 8 (citing *Fields v. Bagley*, 275 F.3d 478, 482 n.1 (6th Cir. 2001); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.

1998).)  Magistrate Judge White further noted that Green has not argued that cause and prejudice excuses this default.  (*Id*. at n.2.)

The R&R also analyzes Green's argument that she is entitled to habeas relief because the state court erred in its interpretation and application of the Ohio Speedy Trial Act.  (*Id*. at 11-12.) First, Magistrate Judge White explains that a challenge to a "perceived error of state law" is not cognizable on federal habeas review.  (*Id*. at 12.)  Such review is limited to whether a violation of the United States Constitution or federal law occurred.  (*Id*. citing *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).)  Magistrate Judge White goes on to consider whether the alleged state court error in interpreting or applying its own laws is so egregious that it rises to the level of a substantive due process violation.  (*Id*. at 12.)  He concludes that, because Green has not alleged that the state's denial of her motion to dismiss for speedy trial violations resulted in a fundamentally unfair trial, and because pretrial proceedings do not generally implicate fundamental fairness concerns, Green's first ground for relief fails as a substantive due process claim.  (*Id*. (citing *Hutchinson v. Marshall*, 744 F.2d 44, 47 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985).)

## 2.    **Ground Two – *Remmer* Hearing**

Green's second ground for relief alleges that the trial court erred by refusing to conduct a *Remmer* hearing regarding whether jurors were exposed to a potentially prejudicial newspaper article.  Magistrate Judge White analyzes this claim on the merits.  (Doc. 12 at 12-15.)  After summarizing the *Remmer* case, Magistrate Judge White distinguishes it on two grounds: (1) whereas the potentially prejudicial communication at issue here is in a published newspaper article, *Remmer* involved direct and private communication between a juror and an individual; (2) whereas the issue in this case involves pure speculation as to whether a juror might have read the newspaper article,

-10-

the juror in *Remmer* reported the communication directly to the trial judge.  (*Id.* at 13.)  Magistrate

Judge White notes, moreover, that there is no authority for the proposition that a trial court must

conduct a *Remmer*-type hearing every time a defendant points to a potentially prejudicial newspaper

article and points out that Green did not actually request a *hearing*, she simply moved for a mistrial.

(*Id.* at 14-15.)  Magistrate Judge White thus rejects Green's assertion that a *Remmer* hearing was

required under the circumstances before the trial court in this case, especially given the obvious

judicial economy concerns if a trial court were required to *voir dire* the jury every time a newspaper

article is published during the course of a trial.  (*Id.* at 15.)

Accordingly, Magistrate Judge White's R&R recommends dismissal of both grounds for

relief.  (Doc. 12.)

### B.    VERBATIM RE-STATEMENTS OF ARGUMENTS ADDRESSED BY THE MAGISTRATE JUDGE ARE NOT PROPER OBJECTIONS

Green filed a brief captioned "Petitioner's Objections to Report and Recommendation of

Magistrate Judge."  (Doc. 13.)  In large part, however, these "Objections" amount to approximately

ten pages of text lifted verbatim from Green's Traverse.  These portions of Green's "Objections" are

not objections, but literally re-statements of arguments she included in her Traverse, which were

addressed by the Magistrate Judge in his R&R.  Such "general objections" do not serve the purposes

of Federal Rule of Civil Procedure 72(b), which requires the Court to conduct a *de novo* review only

of the portions of the Magistrate Judge's R&R to which a party objects.  *See Cvijetinovic v. Eberlin*,

617 F. Supp. 2d 620, 631 (N.D. Ohio 2008) (citing *Jones v. Moore*, No. 3:04CV7584, 2006 WL

903199, at *7 (N.D. Ohio Apr. 7 2006) (Manos, J.)); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D.

Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's

suggested resolution, or simply summarizes what has been presented before, is not an 'objection'

-11-

as that term is used in this context."); *see also Union Labor Life Ins. Co. v. Olsten Corp. Health & Welfare Benefit Plan*, 617 F. Supp. 2d 131, 134 (E.D.N.Y. 2008) (characterizing arguments copied verbatim from prior briefs and labeled "objections" as a "regurgitation" of arguments made to the magistrate judge and finding that they were not proper objections necessitating *de novo* review); *see generally* 12 Charles Alan Wright, Arthur Miller, & Richard L. Marcus, *Federal Prac. & Proc.* § 3070.1, n.4 (2d ed. 2010) (citing numerous cases in various jurisdictions for the principle that "regurgitating" or "rehashing" arguments already submitted to and addressed by the magistrate judge is not an objection sufficient to trigger *de novo* review of the R&R based on the efficiency purpose of a magistrate judge's role).  Accordingly, the Court will address only the objections that Green raised in response to the R&R itself – it will *not* address all of the arguments analyzed in the R&R that are re-asserted verbatim in the Objections.

### C.    GREEN'S PROPERLY ASSERTED OBJECTIONS

#### 1.    Ground One – Speedy Trial

##### a.    Green's Speedy Trial Objection

In her Objections, Green concedes that she raised her speedy trial claim as a state statutory issue in her direct appeal to the Eleventh District Court of Appeals.  (Doc. 13 at 3.)  She contends, however, that the state court of appeals nonetheless "review[ed] the matter in a federal context." (*Id.* ("The state appellate court addressed the matter as a constitutional issue, specifically finding that . . . Green's constitutional right was not violated.  <u>State v. Green</u>, 2005 Ohio 6715, p.9.").[5])  She also accurately notes that she presented her speedy trial claim as a federal due process issue in her

---

[5] Note that Green's pinpoint citation to the state court of appeals opinion on this issue is to page nine, the dissenting opinion of Judge O'Neill.

discretionary appeal to the Ohio Supreme Court.  (Doc. 13 at 3.)  Specifically, in her brief to the

Ohio Supreme Court, she stated: "Ohio's speedy trial statute created a liberty interest for a charged

defendant.  It is a denial of federal due process for a state to ignore its own established law affording

a defendant a liberty interest.  Hicks v. Oklahoma, 447 U.S. 343, 346 (1980)."[6]  (Doc. 8-9 at 9.)  In

her Objections, Green cites *Hicks* in asserting the same federal due process argument:

> Although the interpretation of Ohio['s] speedy trial statute is admittedly a state issue,
> the failure of the state to follow its own law is a violation of federal due process.
> Stated alternatively, Ohio's speedy trial statute established a liberty interest.  Where
> a state statute does result in a liberty-interest for the defendant, then the state must
> enforce or follow its own law or federal due process has been violated.  In Hicks v.
> Oklahoma, 447 U.S. 343, 346 (1980), the United States Supreme Court held as much.

(Doc. 13 at 4.)  Green then proceeds to reiterate approximately three pages of argument from her

Traverse discussing a number of cases citing *Hicks* for the proposition that federal due process is

violated when the state establishes a procedure and then fails to follow it.  (*Id*. at 4-5; *compare* Doc.

11 at 2-3, 6-7.)

### b. Analysis of the Green's Speedy Trial Objection

The first issue is whether Magistrate Judge White correctly concluded that Green

procedurally defaulted her federal speedy trial claim.  The Court agrees with Magistrate Judge

White:  Green failed to submit her speedy trial claim to the state court of appeals as a federal due

process claim, and, as a result, procedural default now bars that unexhausted claim.  In addition,

Magistrate Judge White correctly concluded that, to the extent Green has asserted a constitutional

due process claim for purposes of habeas review, that claim would fail on the merits.

---

[6]  The R&R indicates that Green did not present her speedy trial claim as a federal due
process issue in her brief to the Ohio Supreme Court.  (Doc. 12 at 7.)  In light of the language
quoted above from Green's brief, it appears that the R&R is incorrect on this point.  For the
reasons explained below, this error does not affect the outcome of this case, however.

### i.    Green Failed to Exhaust Her Speedy Trial Claim

As explained above, the exhaustion prerequisite requires a habeas petitioner to present each claim in her Petition to the state court for a complete round of appellate review.  *See Rhines*, 544 U.S. at 274; *Cvijetinovic*, 617 F. Supp. 2d at 629 (citing *O'Sullivan*, 526 U.S. at 842).  The Sixth Circuit has described four ways in which a petitioner may satisfy the fair presentation standard:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).  None of these is applicable here.

Green's appellate brief is devoid of any reference to the United States Constitution, the Sixth Amendment, the Fourteenth Amendment, *Hicks*, *Barker v. Wingo*, 407 U.S. 514 (1972), or any other federal authority that would indicate an intention to assert a speedy trial claim based on federal law. (Doc. 8, Ex. 8.)    In fact, the only case Green cited in the speedy trial portion of her appellate brief was *State v. Brown*, 781 N.E. 2d 159, 161 (Ohio 2003), in which the Ohio Supreme Court expressly noted that the case "revolves around the statutory right to a speedy trial, not the constitutional right to a speedy trial." (Doc. 8, Ex. 8 at 14.)  The *Brown* decision is certainly *not* a state case that relies on federal authority interpreting federal constitutional questions such that Green could argue that she presented the federal claim obliquely.  *See Whiting*, 395 F.3d at 613. In response, the state briefed the issue as a pure question of interpreting and applying the Ohio Speedy Trial Act, indicating that it did not interpret Green's appeal as asserting a speedy trial claim pursuant to federal law. (Doc.

-14-

8, Ex. 9.[7])  Both parties' appellate briefs clearly and narrowly focus on calculating whether the trial

court had allowed the speedy trial clock to expire under the tolling provisions of R.C. § 2945.71 *et*

*seq*.; neither discusses the federal or constitutional dimensions of the claim.

Green, still represented by the same counsel, took a different approach in her discretionary

appeal to the Ohio Supreme Court – i.e., she expressly argued that the state violated her federal due

process rights by failing to adhere to the statutory speedy trial deadline.  (Doc. 8, Ex. 11 at 9.)  In

fact, in her brief in support of jurisdiction, she made the same argument she asserts in this habeas

Petition: under *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980), a state violates due process when it

creates a liberty interest by statute and then fails to adhere to that statute.  (*Id*.)  Her brief on this

issue concludes by asserting that "Green was denied her rights under both the Ohio statutes and

federal due process."  (*Id*.)

In her Objections, Green contends that she "fairly presented" her speedy trial claim to the

Ohio courts as a federal claim and specifically objects to the R&R's conclusion to the contrary.

(Doc. 9 at 3-4.)  While the Court finds that Green *did* present her speedy trial argument to the Ohio

Supreme Court as a federal due process claim, it is equally clear that she did *not* present that claim

to the Eleventh District Court of Appeals.  Accordingly, the issue is whether Green exhausted her

federal due process claim by asserting it *for the first time* in her appeal to the Ohio Supreme Court.

In other words, is exhaustion contingent upon presenting the federal claim to each court in the state

appellate ladder, or is it sufficient to present the claim to the Ohio Supreme Court alone?[8]   The

---

[7]  The only reference to federal law in the state's appellate brief is an introductory
acknowledgment that both the Ohio Constitution and the United States Constitution include a
speedy trial guarantee.  (Doc. 8, Ex. 9 at 15.)

[8]  Green did not address this question in her objections, opting instead for the untenable
argument that she did present her speedy trial argument as a federal due process claim to the state

-15-

parties and Magistrate Judge White have not directly addressed this specific exhaustion issue.[9]

In *O'Sullivan*, the United States Supreme Court explained the exhaustion requirement as

follows:

> Because the exhaustion doctrine is designed to give the state courts a full and fair
> opportunity to resolve federal constitutional claims before those claims are presented
> to the federal courts, we conclude that state prisoners must give the state courts *one
> full opportunity* to resolve any constitutional issues by invoking *one complete round
> of the State's established appellate review process*. Here, Illinois' established, normal
> appellate review procedure is a two-tiered system. Comity, in these circumstances,
> dictates that Boerckel use the State's established appellate review procedures before
> he presents his claims to a federal court.

*O'Sullivan*, 526 U.S. at 845 (emphasis added).  By describing a "full and fair opportunity" as "one

complete round of the State's established appellate review process," the Supreme Court implied that

a habeas petition must present her claims to *each* level in the established hierarchy of state appellate

review.  The Sixth Circuit and district courts within the Sixth Circuit have applied this rule.  *See*

*Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990) ("[P]etitioner cannot be deemed to have

exhausted his state court remedies as required by 28 U.S.C. § 2254(b) and (c) as to any issue, unless

he has presented that issue both to the Michigan Court of Appeals and to the Michigan Supreme

---

court of appeals.  Magistrate Judge White did not address it because he mistakenly found that
Green had not presented a federal due process claim to the Ohio Supreme Court.  The State came
the closest to addressing it in their Return of Writ, stating that a habeas petitioner must "exhaust
his state court remedies by fairly presenting all of his constitutional claims to the highest state
court, *and to all appropriate state courts prior to that*, so that the state is given the opportunity to
pass upon and correct alleged violations of its prisoners' federal rights."  (Doc. 8 at 8.)

[9]  It is tempting to treat this issue as a component of the procedural default analysis: if the
Ohio Supreme Court would invoke *res judicata* in refusing to consider a federal due process
claim that was not presented to the state court of appeals, then the claim is procedurally
defaulted.  This approach, however, would conflate two distinct concepts of federal habeas law –
exhaustion and procedural default.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)
("[P]rocedural default is often confused with exhaustion. Exhaustion and procedural default,
however, are distinct concepts.")  Habeas law is already a murky jurisprudence; it is important to
try to avoid muddying the waters further.

-16-

Court." (internal quotations and citations omitted)); *Rhoden v. Berghuis*, Case No. 2:08cv11329, 2010 WL 1576837 at *4 (E.D. Mich. Apr. 20, 2010) (citing *O'Sullivan*, 526 U.S. at 845-47 and *Hafley*, 902 F.2d at 483 for the proposition that "[a] petitioner must fairly present his claims at each level of state court review."); *Spencer v. Wolfenbarger*, Case No. 07cv11176, 2010 WL 1323573 at *5 (E.D. Mich. Mar. 29, 2010) (citing *O'Sullivan*, 526 U.S. at 845-47 for the proposition that "petitioner must fairly present the [federal] claim at each level of state-court review."); *cf. Clinkscale v. Carter*, 375 F.3d 430, 438 (6th Cir. 2004) (holding that petitioner had satisfied the *O'Sullivan* exhaustion requirements of "one complete round of the State's established appellate review process" by submitting his claim to the Ohio court of appeals and then the Ohio Supreme Court). Consequently, the Court finds that Green failed to exhaust her federal due process speedy trial claim because she did not present it to the state court of appeals.

### ii.    Procedural Default Due to *Res Judicata*

The next issue is whether Green's unexhausted claim is subject to procedural default.  As Magistrate Judge White explained in the R&R, when a petitioner fails to exhaust state remedies but the state court would now find that the claim is barred by a state procedural rule, procedural default bars habeas review of the unexhausted claim.  (Doc. 12 at 8.)  Further, Magistrate Judge White correctly noted that "Ohio courts have found that the doctrine of *res judicata* 'bars a convicted defendant, who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant . . . on an appeal from that judgment.'" (*Id*. (quoting *State v. Benton*, 272 N.E. 2d 92, 94 (Ohio 1971).)  Green did not object to this aspect of the R&R.  (*See* Doc. 13.)  Magistrate Judge White's analysis of this issue, moreover, accurately reflects applicable law.

-17-

(Doc. 12 at 8); *see also Mathews v. Konteh*, Case No. 06cv2028, 2010 WL 750133, at *5 (N.D. Ohio Mar. 1, 2010) (citing *Monzo v. Edwards*, 281 F.3d 568, 576-77 (6th Cir. 2002)).  Accordingly, the Court **ADOPTS** the R&R with respect to the conclusion that Ground One of Green's Petition is procedurally defaulted.

### iii.      Green's *Hicks* Argument Fails

Green's objections do not specifically mention Magistrate Judge White's analysis of her claim that the state court's alleged failure to adhere to its speedy trial statute is itself a violation of her federal due process rights.  Liberally construing her argument regarding the *Hicks* case and the liberty interest created by a state speedy trial statute as a valid objection, the Court finds that Magistrate Judge White correctly determined that Green is not entitled to habeas relief in connection with the state court's interpretation or application of the Ohio speedy trial statute.

Magistrate Judge White quoted *Norris v. Schotten*, 146 F.3d 314, 329 (6th Cir. 1998), *cert. denied*, 525 U.S. 935 (1998), for the principle that a federal habeas court may not set aside the state court of appeal's finding that the petitioner's state statutory speedy trial rights had not been violated.[10]  He thus concluded that, to the extent Green is really challenging the state court's decision directly, her claim is non-cognizable on habeas review.  Magistrate Judge White then cited *Hutchison v. Marshall*, 744 F.2d at 47 for the proposition that Sixth Circuit law generally does not recognize substantive due process claims in the context of pretrial proceedings that do not tend to

---

[10]  In *Norris*, the Sixth Circuit stated:

It is especially inappropriate for a federal habeas court to set aside a state court's ruling on an issue of state law where, as in the present situation, Ohio's appellate courts on direct appeal have already found appellant's claim of a violation of his statutory right to a speedy trial to be meritless.

*Norris*, 146 F.3d at 329.

affect the fairness of the trial itself.  (Doc. 12 at 12.)  Although Green does not address *Hutchison* in her Objections, Magistrate Judge White correctly identified it as the key authority applicable to Green's fundamental fairness "liberty interest" argument based on *Hicks*.

In *Hutchison*, the habeas petitioner argued that the Ohio courts violated his federal due process rights by "arbitrarily" denying him a speedy trial pursuant to the Ohio speedy trial statute, which created a liberty interest.  *Hutchison*, 744 F.2d at 46-47.  The Sixth Circuit first noted that the Ohio courts found that the state did *not* violate the state speedy trial statute, and that "it is axiomatic that state courts are the final authority on state law."  *Id*. at 46.  The Sixth Circuit further noted that, "[e]ven if it could be said that the state court's interpretation is wrong, it has long been recognized that 'a mere error of state law' is not a denial of due process."  *Id*. (citing *Gryger v. Burke*, 334 U.S. 728, 731 (1948); *Engle v. Isaac*, 456 U.S. 107, 121 n. 21 (1982) (quoting *Gryger*)).  Similarly, Green's argument that she is entitled to habeas relief because the state courts erroneously interpreted or applied Ohio's speedy trial statute fails.  *Id*. (rejecting the petitioner's due process argument based on "the premise that the Ohio courts erroneously interpreted or applied the Ohio statute").

The Sixth Circuit, moreover, addressed and rejected the petitioner's argument that the "fundamental fairness" component of constitutional due process justified habeas relief in *Hutchison*.  Specifically, the "fundamental fairness" doctrine stems from "the belief that a "fair trial in a fair tribunal is a basic requirement of due process."  *Hutchison*, 744 F.2d at 47 (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).  As the Sixth Circuit explained, however, the speedy trial claim at issue in *Hutchison* did not implicate the fairness of the petitioner's trial; instead, it related to whether his pretrial detention was justified.  *Id*.; *see also Norris*, 146 F.3d at 329 (stating that Ohio's speedy trial statute relates to the fairness of pre-trial detention, not the fairness of the trial itself).  Likewise, as

Magistrate Judge White concluded, Green's speedy trial claim is not one that fundamentally relates to the fairness of her trial.  *See id.*; *see also Kelly v. Wilson*, Case No. 07cv2856, 2009 WL 185947, at *10 (N.D. Ohio Jan. 26, 2009) (citing *Hutchison*, 744 F.2d at 47); *Donald v. Bobby*, Case No. 06cv2018, 2008 WL 891981, at *7 (N.D. Ohio Apr. 2, 2008) (citing *Hutchison*, 744 F.2d at 45; *Norris*, 146 F.3d at 329)).

In addition, the district court opinion affirmed by the Sixth Circuit in *Hutchison* expressly addressed and rejected the petitioner's arguments based on *Hicks*, 447 U.S. at 346:

> Two cases cited by the Petitioner do not change this result.  In . . . *Hicks* . . ., the Supreme Court held that arbitrary denials of rights created by state law could constitute violations of due process.  No such "arbitrary denials" took place in this case.  The state courts held that petitioner's rights under the Ohio Speedy Trial Act were *not* denied.  Even if that conclusion is incorrect, petitioner's rights to procedural or substantive due process were not ignored, since he had an opportunity to present his arguments to the state courts, and . . . any "denial" of state-created rights did not result in a breach of "fundamental fairness."

*Hutchison v. Marshall*, 573 F. Supp. 496, 500-01 (S.D. Ohio 1983).  Like the petitioner in *Hutchison*, Green had a full and fair opportunity to challenge the trial court's interpretation and application of the Ohio Speedy Trial Act in her state court appeals.  *Id.*; *see also Norris*, 146 F.3d at 329 (explaining that the petitioner could not make out a due process claim regarding the Ohio Speedy Trial Act without alleging that "the Ohio court system as a whole is arbitrary and lacks a rational mechanism/process for remedying errors").  Accordingly, this is not a case involving "arbitrary denials" of a constitutional liberty interest; it is, rather, a case in which Green disagrees with the state courts' interpretation of state law.

For all of the foregoing reasons, the Court **ADOPTS** the R&R's analysis and conclusion with respect to Green's argument that the state court's interpretation and application of Ohio's speedy trial

statute was "fundamentally unfair" in violation of her constitutional due process rights.[11]

### 2.    Ground Two – *Remmer* Violation

Green's objection to Magistrate Judge White's analysis of Ground Two of her Petition is

narrow.[12]  Specifically, Green states:

> The petition was denied [by Magistrate Judge White] ostensibly because Green did
> not ask for a hearing and because no prejudice was established (Dkt 12, p. 15)[.]
> Green did request the voir dire of the jurors.  The fact that she did not say the word
> hearing should be of little consequence.  Had the hearing been requested, the result
> would have been that the judge would have conducted voir dire of the individual
> jurors, exactly what was requested.

(Doc. 13 at 8.)  Green does not cite any authority for this objection, and her argument is not entirely

---

[11]  Even if Green had presented a Sixth Amendment speedy trial claim (which she has
not) as opposed to a due process claim, it would fail.  The Sixth Amendment to the United States
Constitution grants criminal defendants the right to a "speedy" trial.  U.S. Const. amend. VI.
This right has been incorporated through the Fourteenth Amendment and applies to the states.
*See Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).  Whether the Sixth Amendment right
to a speedy trial has been violated is evaluated based the balancing of the four factors set forth in
*Barker v. Wingo*, 407 U.S. 514, 530 (1972):  (1) the length of the delay; (2) the reason for the
delay; (3) the defendant's assertion of her right, and (4) prejudice to the defendant.  In this case,
the delay in bringing Green to trial was in excess of one year and, therefore, was "presumptively
prejudicial."  *See Doggett v. United States*, 505 U.S. 647, 652 (1992).  The remaining factors
indicate that the state did not violate Green's Sixth Amendment right to a speedy trial, however.
As the parties briefs indicate, much of the delay is attributable to motions filed by Green herself.
While Green asserted her right to a speedy trial on the eve of trial, she also expressly waived her
speedy trial rights for purposes of obtaining continuances.  Finally, she has not argued, and there
is nothing to suggest that, she was actually prejudiced by the delay.  This last factor would
require the court to assess prejudice in light of the concerns the Sixth Amendment speedy trial
guarantee was designed to protect against: (1) oppressive pretrial incarceration; (2) the anxiety
and concern of the accused; and (3) interference with or impairment of the defendant's ability to
mount a defense.  *See Doggett*, 505 U.S. at 654.  Green has presented no argument or evidence
indicating that she was prejudiced in light of any of these concerns.  Accordingly, had Green
asserted a Sixth Amendment speedy trial claim, it would fail.

[12]  Again, Green reproduced several pages of her Traverse relating to Ground Two into
her "Objections" verbatim.  (*See* Doc. 13 at 8-10.)  The Court considers these arguments only to
the extent that they assist the Court in understanding the nature of Green's properly asserted
objection.

clear to the Court.  Based on the remaining two pages of her objection with respect to Ground Two, it appears that she is arguing that the Court should extend clearly established federal law regarding the right to a fair and impartial jury to require a trial judge to *voir dire* jurors under the circumstances of this case.  (Doc. 13 at 8-10.)

Simply put, there is no authority for this position and the Court rejects it.[13]  First, the R&R accurately notes that case law indicates that a court is not required to conduct a *Remmer* hearing *sua sponte* if the defendant does not request one.  This is just one non-dispositive aspect of Magistrate Judge White's analysis, however.  He also concludes that: (1) the *Remmer* case is clearly distinguishable from this case; (2)  the state court of appeals found that the trial court could deny a request to *voir dire* the jurors under the circumstances of this case without abusing its discretion, *see Green*, 2005 WL 3476663 at *6; (3) there is no authority, let alone clearly established federal authority, for the proposition that a trial court *must* conduct a *Remmer* hearing every time a potentially prejudicial news story is published and raised by the defendant; (4) there *is* authority for the proposition that the trial court may refuse to conduct a *Remmer* hearing when, as in this case, the defendant fails to present any evidence that any juror had ignored the trial court's instructions and/or was actually exposed to the potentially prejudicial newspaper article.  Green has not submitted any argument or authority contradicting or undermining Magistrate Judge White's conclusions.  Accordingly, the Court overrules Green's objection with respect to Ground Two of her Petition, and **ADOPTS** the analysis and conclusion of the R&R.

---

[13]  There is, of course, Supreme Court authority for the proposition that state courts can violate clearly established federal law by "unreasonably refus[ing] to extend a legal principle to a new context where it should apply."  *Williams*, 529 U.S. at 408.  For the reasons stated in the R&R, this is not such a case, however.

## IV.    THE COURT WILL NOT ISSUE A CERTIFICATE OF APPEALABILITY

For the foregoing reasons, the Court finds that Green did not make "a substantial showing of the denial of a constitutional right" with respect to any of her claims in her Petition.  28 U.S.C. § 2253(c)(2).  Accordingly, the Court will <u>not</u> issue a certificate of appealability.

Additionally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

## V.    CONCLUSION

For the foregoing reasons, Magistrate Judge White's R&R (Doc. 10) is **ADOPTED** as discussed above.[14]  Consequently, Green's objections are **OVERRULED** and her Petition is hereby **DISMISSED**.


     **IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: May 14, 2010**

---

[14]  The only aspect of the R&R that the Court does *not* adopt is the conclusion that Green did not raise the argument asserted in Ground One of her Petition before the Ohio Supreme Court.  (*See supra*, footnote 5.)  As explained above, the Court finds that Green did present the claim asserted in Ground One of her petition to the Ohio Supreme Court.

-23-